65 F.3d 168
 76 A.F.T.R.2d 95-6391, 95-2 USTC P 50,479
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sam B. JONES and Louanna Jones, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 94-3648.
 United States Court of Appeals, Sixth Circuit.
 Aug. 24, 1995.
 
 Before: NELSON and RYAN, Circuit Judges, and ECHOLS, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs, Sam and Louanna Jones,[1] contend that the United States improperly allocated $100,000 of taxable income to them for the tax year 1981. They filed a complaint in the United States District Court for the Northern District of Ohio, seeking a refund of the corresponding federal income taxes, interest and penalties which they paid to the Internal Revenue Service.
 
 
 2
 The district court entered summary judgment in favor of the Government, finding that the $100,000 was properly attributed to Mr. and Mrs. Jones as income and therefore, that they are not entitled to the requested refund.
 
 
 3
 Mr. and Mrs. Jones have appealed that ruling, arguing that the district court erred in granting summary judgment because there exists a genuine dispute about the proper allocation of the $100,000.
 
 
 4
 Finding the arguments of Mr. and Mrs. Jones unpersuasive, we affirm the district court's entry of summary judgment in favor of the Government.
 
 I.
 
 5
 Sam B. Jones owned one hundred percent of the stock in the Bryan F. Jones Agency, Inc. ("the agency"), an Ohio corporation which was in the business of selling insurance. Jones also owned interests in several other businesses, including a minority interest in Alliance Underwriters of Ohio Agency, Inc. ("Alliance"). As president and sole shareholder of the agency, Jones entered into a contract to sell the assets of the agency for the total purchase price of $539,000. The purchase agreement identified Allan Stoessner as the "Buyer" and Sam Jones and the agency, collectively, as the "Seller." Of the total purchase price, $100,000 was specifically designated as consideration for the Seller's covenant not to compete.
 
 
 6
 With regard to the covenant not to compete, the agreement provided:
 
 
 7
 Whereas the Seller desires to sell to Buyer all of the assets and interest in and of the Bryan F. Jones Agency, Inc., a business engaged in the sales of insurance policies and programs in the general area of Portage County and immediate vicinity, including expiration lists, office furniture, fixtures, goodwill, the use of the name "Bryan F. Jones Agency" and a covenant by the seller, Sam B. Jones, not to compete as set forth in more detail below....
 
 
 8
 ....
 
 
 9
 F. The Seller, either Sam B. Jones, individually, or The Bryan F. Jones Agency, Inc., shall not, directly or indirectly, for a period of three years from the closing date [compete against the Buyer].
 
 
 10
 ....
 
 
 11
 e. In connection with the foregoing, it is understood that the Seller will maintain and continue to pursue business in the entity known as Alliance Underwriters of Ohio Agency, Inc., provided, however, that in pursuing that business the Seller may not violate or infringe the covenants contained in F. a. through d. of this agreement.
 
 
 12
 Although $439,000 of the purchase proceeds was reported by the agency[2] as income, the $100,000 designated as consideration for the covenant not to compete was reported neither on the tax return of Mr. and Mrs. Jones nor on any of the tax returns of the businesses with which Mr. Jones is affiliated.
 
 
 13
 When the Internal Revenue Service determined that the unreported $100,000 should be attributed to them, Mr. and Mrs. Jones paid the entire tax, plus penalties and interest, and subsequently filed this suit seeking a refund.
 
 II.
 
 14
 This case involves the interpretation of a contract, which is a matter of law subject to de novo review by this Court. First Am. Bank v. Fidelity & Deposit Co., 5 F.3d 982, 984 (6th Cir.1993). Pursuant to Federal Rule of Civil Procedure 52(a), any factual findings of the district court are reviewed for clear error. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).
 
 III.
 
 15
 It is well-established that the amount a buyer pays a seller in exchange for a covenant not to compete is taxable as ordinary income to the seller. Comm'r v. Danielson, 378 F.2d 771, 775 (3d Cir.1967), cert. denied, 389 U.S. 858 (1967); North Am. Rayon Corp. v. Comm'r, 12 F.3d 583, 587 (6th Cir.1993). In order to challenge the unambiguous allocation of the purchase price among assets in an asset purchase agreement, a party must demonstrate that the contract is unenforceable due to mistake, undue influence, fraud, or duress. Danielson, 378 F.2d at 775; North Am. Rayon Corp., 12 F.3d at 589.
 
 
 16
 Where the contract terms regarding the allocation of the purchase price to a non-compete covenant are ambiguous or where there is no contract, the Danielson rule does not apply. North Am. Rayon, 12 F.3d at 588. In such a situation, the court, in determining the proper allocation of the purchase price, will consider the mutual intent of the parties at the time of the agreement. See Patterson v. Comm'r, 810 F.2d 562, 570-71 (6th Cir.1987). However, the "Danielson rule" precludes the court from considering the parties' mutual intent unless it is first established that material terms of the contract are ambiguous. Id. at 572.
 
 
 17
 Mr. and Mrs. Jones do not allege that the sales agreement is unenforceable or ambiguous. Instead, they simply contend that the $100,000 should be allocated not to them, but to Alliance, the insurance agency in which Mr. Jones is a minority shareholder.[3] They present two arguments in support of that proposition: (1) that Alliance was bound by the covenant not to compete; and (2) that Alliance ultimately received the $100,000.
 
 A.
 
 18
 Although the sales agreement provides that only Mr. Jones and the Bryan F. Jones Agency will not compete against the buyer for a period of three years, Mr. and Mrs. Jones allege that Alliance also was bound by the covenant not to compete. In support, they point to paragraph F(e) of the sales agreement which allowed Mr. Jones to maintain his minority interest in Alliance, provided that he did not violate the covenant not to compete. They argue that this paragraph necessarily bound Alliance to the non-compete agreement, although they concede that neither Alliance nor its other shareholders were signatories to the contract. Mr. and Mrs. Jones further allege that Alliance possessed the ability to compete with the buyer, and that Mr. Jones believed it was his obligation to ensure that Alliance did not do so. Finally, they contend that Alliance did comply with the covenant not to compete.
 
 
 19
 It is undisputed that neither Alliance nor any of its other shareholders was a signatory to the non-compete agreement. Under Ohio law, it is axiomatic that a corporation is a wholly separate legal entity from its shareholders, such that it cannot be bound by the independent action of any of them. See, e.g., Miles v. Kohli & Kaliher Assocs., 917 F.2d 235, 254 (6th Cir.1990); Bucyrus-Erie Co. v. General Prods. Corp., 643 F.2d 413, 418 (6th Cir.1981). Therefore, a minority shareholder's assent to an agreement cannot bind his or her corporation to that agreement.
 
 
 20
 Further, the sales agreement is not ambiguous. Absent any ambiguity, extrinsic evidence regarding the parties' intent is not admissible. See atterson v. Comm'r., 810 F.2d 562, 570 (6th Cir.1987).
 
 B.
 
 21
 Finally, Mr. and Mrs. Jones argue that the $100,000 is taxable to Alliance because Alliance ultimately received the money which was paid by Stoessner.
 
 
 22
 It is well-established that a taxpayer cannot assign a portion of his income to avoid tax liability thereon. Lucas v. Earl, 281 U.S. 111, 114-15 (1930); Parker v. Routzahn, 56 F.2d 730, 733 (6th Cir.1932), cert. denied, 287 U.S. 606 (1932). Indeed, "[t]he power to dispose of income is the equivalent of ownership of it. The exercise of that power to procure the payment of income to another is the enjoyment and hence the realization of the income by him who exercises it." Helvering v. Horst, 311 U.S. 112, 118 (1940).
 
 IV.
 
 23
 The district court found that it was undisputed that Mr. Jones personally gave the covenant not to compete and that he alone possessed the power to direct disposition of the $100,000 received therefor. Accordingly, the district court's entry of summary judgment in the Government's favor was not in error.
 
 
 24
 AFFIRMED.
 
 
 
 *
 The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennessee, sitting by designation
 
 
 [1]
 Louanna Jones is a party to this proceeding solely by virtue of having filed her federal income tax return for the year 1981 jointly with her husband
 
 
 [2]
 Actually, the Sam B. Jones Agency, successor to the Bryan F. Jones Agency, reported the $439,000 as income
 
 
 [3]
 At oral argument before this Court, Plaintiffs alternatively argued that the $100,000 should be apportioned between Mr. Jones and Alliance
 We note, and counsel for Mr. and Mrs. Jones has conceded, that this argument was not presented to the district court. Therefore, we need not address this portion of their argument, as it was not raised in the court below. Foster v. Barilow, 6 F.3d 405, 408 (6th Cir.1993) (appellate court "is not compelled to hear, nor should it hear, an issue not presented to the district court unless reaching that issue serves an over-arching purpose beyond that of arriving at the correct result in an individual case").